**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH PHELAN,** | : | **Civil Action No.** |
| **PLAINTIFF,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **LOGOPLASTE USA, INC.,** | : | |
| **DEFENDANT.** | : | |

## CIVIL ACTION

Plaintiff, Joseph Phelan (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Logoplaste USA, Inc. (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Ephrata, PA.
3. Upon information and belief, Defendant Logoplaste USA, Inc. is a plastics manufacturer with a location at 400 W Lincoln Avenue, Lititz, PA 17543 and with a corporate headquarters at 14420 South Van Dyke Road, Plainfield, IL 60544.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law and local ordinance claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under the ADA and the PHRA.

15. On or about June 3, 2026, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), which he digitally signed the same day, alleging disability discrimination as well as retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2026-07058 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated July 24, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. In or around October 2022, Defendant hired Plaintiff in the position of Machine Operator.

23. Plaintiff was well qualified for his position and performed well.

24. In or around April 2023, Defendant promoted Plaintiff to the position of Quality Technician.

25. Plaintiff was well qualified for his position and performed well.

26. In or around April 2024, Defendant promoted Plaintiff to Shift Lead.

27. Plaintiff was well qualified for his position and performed well.

## PLAINTIFF CALLED OUT OF WORK DUE TO HIS DISABILITY

28. On April 7, 2026, Plaintiff was unable to report to his scheduled night shift due to a severe dental abscess that had caused significant swelling in his face.

29. The severe dental abscess is considered a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

30. The major life activities affected by a severe dental abscess include, but are not limited to, eating, speaking and working.

31. Plaintiff notified Steve Simon, Plant Manager, via text message that he was unable to report to work due to his severe dental abscess.

32. Simon acknowledged Plaintiff's condition and told him to get better.

**PLAINTIFF NOTIFIED DEFENDANT OF HIS SCHEDULED SURGERY TO TREAT HIS DISABILITY AND CONTINUED HIS LEAVE OF ABSENCE**

33. On April 8, 2026, Plaintiff went to a dentist for evaluation and treatment.

34. On April 10, 2026, Plaintiff informed Simon and Nathan Aung, Manager, via text message that he had oral surgery scheduled for April 15, 2026.

35. On April 15, 2026, Plaintiff underwent the extraction of two molars and the installation of two bone grafts, a significant oral surgical procedure without anesthesia, post-operative recovery, and pain and meaningful restrictions on activities including eating to last months beyond the day of surgery.

36. Defendant had actual knowledge of Plaintiff's condition and the scheduled surgical intervention, having been informed by Plaintiff directly on multiple occasions between April 7 and April 15, 2026.

**DEFENDANT DID NOT NOTIFY PLAINTIFF OF HIS RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")**

37. At no time did Defendant notify Plaintiff of his eligibility for Family and Medical Leave Act ("FMLA") leave to cover his medical leave of absence and did not provide him with the documents to request FMLA leave.

**DEFENDANT DENIED PLAINTIFF'S REQUEST FOR AN ADDITIONAL DAY OF LEAVE TO RECOVER FROM HIS SURGERY**

38. Plaintiff initially anticipated returning to work on April 16, 2026, the day following his surgery.

39. However, given the extent of the surgical procedure, two (2) extractions and two (2) bone grafts, Plaintiff remained in significant post-operative pain on April 16 and requested that Aung approve one additional day of leave to allow him to recover.

40. Importantly, Plaintiff was only prescribed Tylenol to address the significant post-operative pain he suffered from.

41. Plaintiff provided documentation from his treating provider to support this request.

42. However, Aung informed him that Human Resources had determined his extended leave request would not be excused and that his physician's documentation was insufficient to justify the additional day.

43. Aung further communicated to Plaintiff that unless he could locate a colleague to cover his shift, he was required to report to work, a condition not grounded in any legitimate operational necessity but rather reflecting a deliberate refusal to accommodate a post-surgical recovery need for which documented medical support had been provided.

44. This demand placed Plaintiff in the position of having to choose between his physical recovery and his employment, in circumstances where the ADA required Defendant to engage in an interactive process and explore available accommodations rather than demand immediate return to work.

## PLAINTIFF REPORTED TO WORK, BUT WAS FORCED TO LEAVE EARLY DUE TO HIS SYMPTOMS

45. Compelled by this ultimatum, Plaintiff reported to work on April 16, 2026.

46. Shortly after arriving, Plaintiff began experiencing dizziness and lightheadedness, symptoms consistent with post-operative effects of oral surgery, including the residual effects of physiological aftermath of a significant surgical procedure.

47. Recognizing that his impaired condition presented a potential safety hazard to himself and others in a manufacturing environment, Plaintiff informed Aung of his symptoms and left the worksite after approximately thirty (30) minutes.

48. The decision to leave was driven by legitimate safety concerns about working while physically impaired in a manufacturing context.

**SIMON ISSUED PLAINTIFF A WRITTEN WARNING FOR ATTENDANCE**

49. On April 21, 2026, Simon issued Plaintiff a formal written warning for attendance, citing the absences that had been directly caused by his medical condition and surgical procedure, each of which had been supported by physician documentation, as well as the April 16, 2026 early departure that had been necessitated by post-operative symptoms that presented a safety risk.

**PLAINTIFF COMPLAINED TO AUNG ABOUT HIS WRITTEN DISCIPLINE**

50. Plaintiff contacted Aung and raised his concern about the written discipline, specifically questioning whether Human Resources had been informed of the circumstances, under which he left work early on April 16, 2026.

51. Aung acknowledged the situation but maintained that the physician's notes were insufficient, and indicated that he had shown restraint by charging Plaintiff for only one day rather than both days of the April 15 and 16 absences.

**PLAINTIFF ESCALATED HIS COMPLAINT TO HUMAN RESOURCES**

52. On April 22, 2026, Plaintiff brought his complaint directly to Christopher Dickison, Regional Human Resource Representative, who had drafted the written discipline, via email.

53. However, on April 23, 2026, Dickison responded to Plaintiff that "an absence of this nature is not covered by any company processes or guidelines, nor by local, state, or federal laws such as FMLA or persona leave that would justify the absence."

54. The statement reflected either a fundamental misapprehension of the ADA and the FMLA, which unambiguously covers an employee who requires leave due to a disabling medical condition and surgical procedure, or a willful disregard of its application to Plaintiff.

55. Either way, it establishes that Defendant never engaged in the good faith analysis required by the ADA and the FMLA.

**PLAINTIFF BROUGHT HIS COMPLAINT TO THE GLOBAL DIRECTOR OF ENVIRONMENTAL, HEALTH AND SAFETY**

56. On April 27, 2026, Plaintiff escalated his complaint to Kevin Morgan, Global Director of Environmental, Health and Safety, who indicated he would follow up with Dickison regarding the matter.

57. Three (3) days later, on April 30, 2026, Plaintiff followed up with Morgan, who advised him that the discipline had been upheld and was justified, and directed Plaintiff to file an ethics complaint through a link he provided.

**PLAINTIFF FILED AN ETHICS COMPLAINT**

58. Plaintiff proceeded to file an ethics complaint through the link that was provided by Morgan.

**DEFENDANT TERMINATED PLAINTIFF**

59. On May 7, 2026, seven (7) days after Plaintiff's April 30, 2026 follow-up with Morgan, and approximately two (2) to three (3) weeks after his initial Human Resources complaint, Simon called Plaintiff and terminated his employment.

60. The stated basis for termination was that Plaintiff had committed time theft, for failing to clock out when he accompanied a coworker to a nearby Sheetz on a lunch run on April 24, 2026, and had been stopped by the police.

61. Plaintiff had notified his back up that he would be late and needed coverage after he had been stopped by the police.

62. Importantly, Plaintiff had been expressly instructed by Aung in or around August 2025, that employees did not need to clock out for trips to the gas station.

63. Plaintiff followed that instruction consistently with his coworkers and it was common practice among Defendant's employees to engage in this practice.

64. Plaintiff's coworker, who was present for the same outing and engaged in the same conduct, was not disciplined or termination.

65. Plaintiff's coworker is non-disabled, did not take a medical leave of absence and had not complained of discrimination.

66. In addition, Defendant did not discover the Sheetz outing through ordinary course oversight, but through an audit that was conducted of Plaintiff's time records following his internal complaints.

67. Defendant discriminated against Plaintiff due to his disability and retaliated against him for requesting a reasonable accommodation and complaining about the aforementioned discrimination in violation of the ADA and the PHRA.

68. In addition, Defendant interfered with Plaintiff's rights under the FMLA and retaliated against him for absences that should have been FMLA-protected in violation of the FMLA.

69. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

70. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
71. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and their agents as being disabled.
72. Plaintiff was qualified to perform the job.
73. Plaintiff was subject to an adverse employment action, including, but not limited to termination.
74. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.
75. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.
76. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.
77. The purported reason for Defendant's decision is pretextual.
78. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.
79. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

80. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

81. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – DISABILITY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

82. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

83. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and their agents as being disabled.

84. Plaintiff was qualified to perform the job.

85. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

86. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

87. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

88. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

89. The purported reason for Defendant's decision is pretextual.

90. Others similarly situated but outside of Plaintiff's protected class were treated more

favorably.

91. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

92. As a result of Defendants' unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

93. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

94. Plaintiff engaged in activity protected by the ADA.

95. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

96. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

97. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

98. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

99. Plaintiff engaged in activity protected by the PHRA.

100. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

101. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT V – INTERFERENCE**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

102. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

103. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

104. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave to care for his own serious health condition.

105. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

106. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

107. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

108. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic

benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of his personal life and loss of enjoyment of the ordinary pleasures of life.

109. Plaintiff demands judgment in his favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

110. Plaintiff further demands judgment in his favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## COUNT VI – RETALIATION
## FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

111. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

112. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

113. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for his own serious medical condition.

114. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

115. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke his federally protected rights under the FMLA.

116. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by terminating his employment.

117. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's leave that should have been FMLA-protected.

118. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

119. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

120. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

121. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against

Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Joseph Phelan, requests that the Court grant him the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Liquidated damages;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for the negative tax consequences of a lump sum award in a single tax year;

(i) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(j) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**
**KOLLER LAW, LLC**

Date: October 22, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*